```
-----------------------------x
                             :
UNITED STATES OF AMERICA     :
                             :
v.                           :    MISC. NO. _____ (AWT)
                             :
JOHN DOE                     :
                             :
-----------------------------x
```

## RULING ON MOTION TO UNSEAL

The Intervenor has moved to unseal (1) the government's motion to seal and the accompanying motion for a downward departure, and (2) the defendant's sentencing memorandum. For the reasons set forth below, the Intervenor's motion is being denied except to the extent the Intervenor seeks to have a redacted version of the defendant's sentencing memorandum filed.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The defendant pled guilty. In anticipation of sentencing, the defendant filed a motion to seal, accompanied by a sealed sentencing memorandum (the "Defendant's Sentencing Memorandum"). The court granted that motion to seal the next day. The defendant's motion to seal explained that he sought to seal the sentencing memorandum because it relied upon and contained references to cooperation with the government by the defendant and by another individual (the "Additional Cooperator"). The motion stated that the sealing was necessary for the defendant's

-1-

safety during his period of incarceration, and also necessary for the safety of the Additional Cooperator.

Shortly thereafter, the government filed a motion for a downward departure and a supporting memorandum (the "Government's Motion"), accompanied by a motion to seal. The court granted the government's motion to seal two days later. The government's motion to seal explained that its sealing motion and its substantial assistance motion and memorandum contained information related to one or more individuals which, if filed publicly, could expose the individuals to harassment or victimization. As a result of inadvertence, the government submitted its sealing motion and its substantial assistance motion and memorandum through the court's electronic filing system using the menu option "Motion to Seal", unaware that its submission could be publicly accessed unless and until the court granted the motion to seal. During the intervening period between the filing of the Government's Motion and the court's granting of the motion to seal, a reporter for the Intervenor publicly accessed the documents on PACER.

The court held a sentencing hearing, which had been publicly noticed on the docket, in open court. On the day of the sentencing, the Intervenor published an article about the defendant's sentencing, which recounted nearly all of the information that was in the Government's Motion.

The Intervenor filed a motion to intervene and to unseal the Defendant's Sentencing Memorandum and the Government's Motion. The court granted the motion to intervene and scheduled a hearing on the motion to unseal and subsequently, the parties submitted briefing.

Additional factual and procedural background appears in the sealed addendum to this ruling.

## II.  LEGAL STANDARD

"Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." <u>Newsday LLC v. County of Nassau</u>, 730 F.3d 156, 163 (2d Cir. 2013).

As to the First Amendment form, the Second Circuit has:

> . . . applied two different approaches when deciding whether the First Amendment right applies to particular material. The "experience-and-logic" approach applies to both judicial proceedings *and* documents, and asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." [<u>Lugosch v. Pyramid Co. of Onondaga</u>, 435 F.3d 110, 120 (2d Cir. 2006)] (internal quotation marks omitted). The second approach—which we adopt only when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." <u>Id.</u> (internal quotation marks and alteration omitted).

Id. at 164. "Courts adopting the first approach have applied the test for establishing presumptive openness that the Supreme Court distilled from its precedents in Press Enterprise II, where it formulated a two-pronged inquiry for evaluating whether particular proceedings should enjoy openness." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 92 (2d Cir. 2004).

In Press Enterprise II v. Superior Court of California for Riverside Cty., the Court explained:

> In cases dealing with the claim of a First Amendment right of access to criminal proceedings, our decisions have emphasized two complementary considerations. First, because a tradition of accessibility implies the favorable judgment of experience, we have considered whether the place and process have historically been open to the press and general public.... Second, in this setting the Court has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question.

478 U.S. 1, 8 (1986). "This analysis has been summarized as requiring examination of both 'logic' and 'experience' in establishing the public's and press's qualified First Amendment right of access." Hartford Courant Co., 380 F.3d at 92 (citing ABC, Inc. v. Stewart, 360 F.3d 90, 98 (2d Cir.2004) (internal quotation marks omitted)).

"Courts adhering to the second approach have viewed the media's and public's qualified right of access to judicial documents as derived from or a necessary corollary of the

capacity to attend the relevant proceedings." <u>Hartford Courant</u> <u>Co.</u>, 380 F.3d at 93. The Second Circuit has concluded "that the right to inspect documents derives from the public nature of particular tribunals. Our decision in <u>In re The New York Times</u> <u>Company</u>, considering the right of access to documents filed in connection with pretrial motions, observed that '[o]ther circuits that have addressed [the] question have construed the constitutional right of access to apply to written documents submitted in connection with judicial proceedings that themselves implicate the right of access.'" <u>Id.</u>

However, "[e]ven when it applies, . . . the First Amendment right creates only a *presumptive* right of access." <u>Newsday LLC</u>, 730 F.3d at 164 (emphasis in original). "As we have noted, '[w]hat offends the First Amendment is the attempt to [exclude the public] without sufficient justification,' [<u>N.Y. Civil</u> <u>Liberties Union v. N.Y.C. Transit Auth.</u>, 684 F.3d 286, 296 (2d Cir.2012)], not the simple act of exclusion itself." <u>Id.</u> at 164-65. "Broad, general, and conclusory findings are insufficient to justify closure." <u>Id.</u> at 165.

"In contrast to the First Amendment right, the common law right attaches with different weight depending on two factors: (a) "the role of the material at issue in the exercise of Article III judicial power" and (b) "the resultant value of such information to those monitoring the federal courts." <u>Id.</u> (citing

United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995)). "In addition to the weight afforded to the presumptive right of access, the common law right is balanced against countervailing interests favoring secrecy." Id. at 165. In United States v. Harris, 204 F. Supp.3d 10, 16-17 (D.D.C. 2016), the court, relying on EEOC v. National Children's Center, Inc., 98 F.3d 1406 (D.C. Cir. 1996), identified a number of factors that might serve as counterweights to a common-law right of access:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

## III. DISCUSSION

### A. First Amendment Right

Under the first approach to deciding whether there is a presumptive First Amendment right of access to particular judicial documents, the court must consider first, whether the documents have historically been open to the press and the general public, and second, whether public access plays a significant positive role in the functioning of the particular process in question.

The widespread practices of the federal courts, which are documented in the Federal Judicial Center's Survey of Harm to

Cooperators: Final Report, show that there has not been a "tradition of accessibility" to documents relating to a defendant's cooperation. Hartford Courant Co., 380 F.3d at 92. The FJC's Survey states:

> Clearly the most common action taken by the district courts has been, at the request of parties, to seal documents containing cooperation information; sixty-six of the seventy-seven chief district judges who completed the questionnaire said their district had taken this action. Nearly half of the respondents also reported that their district seals, sua sponte, documents containing cooperation information and/or makes criminal documents appear identically on CM/ECF to obscure cooperation information.

Margaret S. Williams, Donna Stienstra, and Marvin Astrada, Fed. Judicial Ctr., Survey of Harm to Cooperators: Final Report, at 26 (2016) (the "FJC Survey"). Moreover, as noted by the government in its response, sealing is not the only approach that courts have traditionally used to protect cooperation information from public disclosure. Other actions, less frequently used, reported by respondents that are taken to protect cooperation information include "ordering parties to redact cooperation information from documents" (19 respondents), "restricting remote access of documents containing cooperation information" (29 respondents), "removing documents containing cooperation information from public files" (19 respondents), and "requiring the entry of documents containing cooperation to be private entries in CM/ECF" (21 respondents). Id.

These widespread practices of the federal courts also
demonstrate that the courts have not traditionally viewed public
access as playing a significant positive role in the functioning
of a sentencing court's consideration of cooperation
information.  Thus, the court concludes that there is not a
presumptive right of access to the documents at issue here under
the first approach.

Under the second approach for establishing a presumptive
right of access under the First Amendment, the court must
determine whether the documents at issue "are derived from or
are a necessary corollary of the capacity to attend the relevant
proceedings." Hartford Courant Co., 380 F.3d at 93. The court
concludes that under this second approach, there is a
presumptive right of access to the Government's Motion and the
Defendant's Sentencing Memorandum.

At issue are "written documents submitted in connection
with judicial proceedings that themselves implicate the right of
access." Id. Access to the documents at issue is a necessary
corollary of the right to attend the sentencing proceedings.
Cooperation information in such documents almost invariably has
a material impact in terms of what sentence is imposed, and the
extent of the impact can vary from case to case. When the public
wants to assess, and victims want to speak to, how the
sentencing judge weighs cooperation information against, for

example, the seriousness of the offense and the history and characteristics of the defendant, they can not do so in a comprehensive way without knowing the cooperation information. See Gambale v. Deutche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) ("As with other branches of government, the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness.").

Here, however, the presumptive right of access is outweighed by the combination of a number of countervailing factors with respect to the Government's Motion and those portions of the Defendant's Sentencing Memorandum that contain cooperation information.

First, while the Government's Motion stated that there was no verified information that the defendant had been threatened, the court notes that the Government's Motion was filed prior to the publication of the article by the Intervenor, and moreover, that "direct threats are not 'a strict condition precedent to a district court's granting of a closure motion.'" United States v. Doe, 870 F.3d 991, 999 (9th Cir. 2017) (quoting United States v. Doe, 63 F.3d 121, 130 (2d Cir. 1995)). Here, by virtue of the fact that the defendant will be incarcerated for a significant

period of time, the defendant faces a materially greater risk of harm if additional information is placed on the public record beyond what has already been released.

The FJC Survey concluded that "[d]efendants were most likely to be harmed or threatened when in some type of custody, while witnesses were either in pretrial detention or not in custody at the time of the harm or threat." FJC Survey, at 1. It also found that "[r]espondents frequently reported court documents or court proceedings as the source for identifying cooperators." Id. Respondents to the FJC Survey "were asked to report harm to defendants/offenders and witnesses in the past three years for up to five cases." Id. The number of cases was limited "to prevent overtaxing respondents." Id. Even within those limited parameters, "[r]espondents reported a minimum of 571 instances of harm to defendants/offenders and witnesses." Id.

The FJC Survey discussed life in prison for cooperators and prison culture in general:

> Overall, while specific policy comments were rare, relative to the other types of comments provided, their tone could be categorized as suggesting a need for something to be done to protect cooperators. This is especially true if we consider all the comments as a group. In addition to the policy comments noted above, seventy-six respondents spoke about life in prison for cooperators, or prison culture in general, clearly noting a problem where there is an expectation of harm in prison for those who do cooperate or are unable to prove that they did not. These respondents consistently told a story of new inmates reporting to

a specific individual (the "shot caller") in the
prison and being required to provide their "paperwork"
within a few weeks of coming to prison. If the inmates
for any reason were unable to prove they were not a
cooperator, they were told to request protective
custody. These concerns prompted inmates to request
their docket information, or (in the case of those who
did cooperate) go so far as to request fake documents
to protect them in prison.

Id. at 29. Also, some respondents specifically referred to PACER
being used to help identify cooperators. See id., Appendix I.
All of these responses are consistent with experiences of
defendants in some of my cases who, while serving their
sentences, seek documentation in response to threats they have
received in prison arising out of queries from other inmates
about cooperation.

Thus, the court finds unpersuasive the Intervenor's
argument that information which has already been made public,
for whatever reason, may not remain under seal. It is undisputed
that nearly all the information that was included in the
Government's Motion regarding the fact and scope of the
defendant's cooperation was publicly disseminated within the
community where he lived as a result of the article published by
the Intervenor. However, there is an important distinction
between information that was published in the newspaper and the
court documents themselves. As documented in the FJC Study, the
defendant's fellow prisoners are likely to place a good deal of
weight on court documents, and, while the defendant may be able

to credibly dispute the accuracy of the newspaper article, he would have a much harder time credibly disputing the contents of the Government's motion, and an even more difficult time disputing the contents of the Defendant's Sentencing Memorandum.

Second, the federal judiciary has an institutional interest in not having court documents being used to identify cooperators. The Committee on Court Administration and Case Management of the Judicial Conference of the United States (the "CACM") issued a June 30, 2016 memorandum ("CACM Memorandum") to judges in response to the FJC Survey. In that memorandum, CACM stated that "[t]he FJC Report fully substantiates the concern that harm to cooperators persists as a severe problem . . . The Committee believes these threats and harms should be viewed in the context of a systemic problem of court records being used in the mistreatment of cooperators." CACM Memorandum, at 2. The CACM further observed that "[t]he conditions cooperators face in prison also impact the sentences imposed by the judiciary" because "some forgo the potential benefits of a motion from the government for a downward departure out of fear that . . . case documents will identify them as cooperators." Id.

> Of particular concern for judges, apart from the need
> to protect the well-being of those we sentence, is the
> fact that our own court documents are being used to
> identify the cooperators who then become targets. In
> many instances these documents are publicly available
> online through PACER. Because criminal case dockets
> are being compared in order to identify cooperators,
> every criminal case is implicated.

Id. at 3.

Also, in some instances defendants in my cases have foregone the benefits of the safety valve under Section 5C1.2 of the United States Sentencing Guidelines because one of the criteria that must be satisfied is that the defendant makes a truthful proffer to the government, and the defendant does not want to risk being viewed as a cooperator.  An important benefit of the safety valve is that a defendant is no longer subject to any mandatory minimum sentence that would otherwise be applicable.

Third, in United States v. Armstrong, 185 F.Supp.3d 332, 336 (E.D.N.Y 2016), the court took note of "how profoundly the federal criminal justice system relies on cooperators."

> As the Second Circuit has recognized, where release of information "is likely to cause persons in the particular *or future* cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." Amodeo, 71 F.3d at 1050 (emphasis added); see also Order to Show Cause at 3-4, In re Motion for Civil Contempt by John Doe, 16-mc-0706 (E.D.N.Y. March 14, 2016) (noting a unique interest in maintaining documents regarding cooperation even after an investigation ends in order not to "hinder the Government's efforts to obtain future cooperation from others"); cf. Douglas Oil Co. of California v. Petrol Stops Nw., 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (discussing secrecy of grand jury proceedings and explaining that the court should consider not only the "immediate effects" of disclosure but also its possible effect on the general functioning of the grand jury system in the future).

Id. at 336–37. It is contrary to the interests of the federal criminal justice system for individuals who will be making a decision about whether to cooperate to have to include among the risks they weigh adverse consequences flowing from a docketing error by counsel for the government.

Fourth, the court agrees with the defendant and the government that the defendant has a reliance interest in not having either the Government's Motion or his sealed statements regarding his cooperation in the Defendant's Sentencing Memorandum publicly disclosed. The defendant never made any statement on the record publicly acknowledging that he had cooperated. Rather, he filed the Defendant's Sentencing Memorandum with the reasonable belief that the Government's Motion would also be under seal. There is a strong public interest in safeguarding the reliance interests of an individual who is cooperating based on a reasonable belief his communications with the court will be confidential. Thus, the facts of this case are materially different from those in United States v. Strevell, No. 05-CR-477 (GLS), 2009 WL 577910 (N.D.N.Y Mar. 4, 2009), one of the cases relied on by the Intervenor. In Strevell, the plea and cooperation agreement was publicly filed. "The government publicly agreed that if his cooperation was substantial, it would advise the Court of the nature and extent of Strevell's cooperation and assistance and recommend a

sentencing reduction . . . ." Id. at *1 (internal quotation marks omitted). Then, "[b]efore sentencing, the government publicly filed its sentencing memorandum [in which] [it] disclosed Strevell's cooperation . . . ." Id. at *2 (internal citations omitted). It also filed under seal a document that revealed details of the defendant's cooperation. The court granted the intervenor's motion to unseal certain judicial documents, reasoning that "Strevell's cooperation and the government's agreement to consider it as a basis for departure, like the genie, has long been out of the bottle." Id. at *5. Nor are the facts of this case comparable to those in United States v. John Doe, 891 F.Supp.2d 296 (E.D.N.Y. 2012). At the time of Doe's guilty plea, the court had sealed the case and the docket sheet. Subsequently, the government acknowledged Doe's cooperation on two occasions and publicly acknowledged his conviction and identity on a third occasion; these repeated disclosures were all inadvertent. In granting the motion to unseal the docket sheet, the court concluded that "the cat is out of the bag, the genie is out of the bottle. Doe's identity and the fact of his conviction was publicly revealed by the Government in a press release, and the docket sheet revealing Doe's identity, conviction, and cooperation is accessible on Westlaw and Lexis." Id. at 300. Here, the defendant does not seek to place under seal his identity or the fact of his

conviction and the judicial documents at issue are not already readily accessible.  The facts of this case are also materially different from those in <u>Gambale</u>, 377 F.3d at 144 ("But however confidential [the settlement amount] may have been beforehand, subsequent to publication it was no longer. It now resides on the highly accessible databases of Westlaw and Lexis and has apparently been disseminated prominently elsewhere.").

Fifth, with respect to the Defendant's Sentencing Memorandum, it contains identifying information with respect to the Additional Cooperator. The Government's Motion does not contain any information about the Additional Cooperator. The parties contemplated that reasonable efforts would be made to protect the safety not only of the defendant but the Additional Cooperator at the time their cooperation was solicited. Thus, the Additional Cooperator has both a reliance and a safety interest.

**B. <u>Common Law Right</u>**

The Government's Motion and the Defendant's Sentencing Memorandum are judicial documents. Under the common law analysis, a court must first ascertain the weight of any presumption of access and then balance it against countervailing concerns. To determine the weight with which the common law right of access attaches, the court must consider two factors: the role of the documents in the exercise of Article III

judicial power, and the resultant value of the information to those monitoring the federal courts. See Newsday LLC, 730 F.3d at 165.

"Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." Amodeo, 71 F.3d at 1049. "Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal." Id. at 1050.

Here, the Government's Motion and the portions of the Defendant's Sentencing Memorandum that contain cooperation information are at the heart of the exercise of Article III judicial power. The information contained in such documents is an important, oftentimes pivotal, consideration for a judge in determining an appropriate sentence. See Strevell, 2009 WL 577910, at *4 ("Access to such documents is warranted because they have a direct bearing on sentencing which is a quintessential judicial function."). On the other hand, except in cases where a cooperating defendant and the government intentionally disclose the details of a defendant's cooperation, e.g. when the defendant testifies at trial as a cooperating witness, there is little to no resultant value of such

information to those monitoring the federal courts because access to such information is restricted to the parties and the court. In this respect, cooperator information that is maintained under seal is much like significant portions of the information in Presentence Reports. Judges rely heavily on Presentence Reports in determining the appropriate sentence. Yet there is no resultant value of information that appears only in those Presentence Reports to those monitoring the federal courts because, although there is always reference made to the Presentence Report during sentencing hearings, the contents of the Presentence Reports remain confidential. See United States v. Alcantara, 396 F.3d 189, 197 n.6 (2d Cir. 2005) ("Courts have generally held, however, that there is no First Amendment right of access to pre-sentence reports."). Local Criminal Rule 32(k) strictly limits dissemination of Presentence Reports and provides for a presumption of non-disclosure. See Local Rule 32(k)(6) ("For situations other than those described above, requests for disclosure shall be handled on an individual basis by the Court, and shall be granted only upon a showing of compelling need for disclosure in order to meet the ends of justice."). In United States v. Charmer Industries, Inc., 711 F.2d 1164, 1176 (2d Cir. 1983), the court concluded "that the [district] court should not release a Presentence Report to a

third person unless that person has shown a compelling need for disclosure to meet the ends of justice."

Therefore, the court concludes that the weight of the public's need for access to the Government's Motion and the portions of the Defendant's Sentencing Memorandum that contain cooperation information is somewhere in the middle of the continuum identified in Amodeo. "Where statements or documents in the middle of the continuum are at issue, the weight to be accorded to the presumption of access must be determined by the exercise of judgment. That judgment can be informed in part by tradition." Amodeo, 71 F.3d at 1049-50.

When the court balances the countervailing factors that are relevant here against this middling weight of presumption of access, it concludes that the countervailing factors outweigh the presumption of access. The countervailing factors to be considered under the common law analysis are the same as those the court has considered with respect to the First Amendment presumption under the second approach: first, mitigation of the risk of harm to a cooperating defendant who is in custody; second, the federal courts' institutional interest in not having court documents being used to identify cooperators; third, the interest of the federal criminal justice system in having people being willing to assume the risks associated with cooperating with the government; fourth, the reliance interest of a

cooperating defendant in not having either the government's substantial assistance motion or his own sealed statements regarding his cooperation publicly disclosed; and fifth, the reliance interest and safety of the Additional Cooperator.

## C. **Scope of the Order to Seal**

The court originally granted a motion to seal the Defendant's Sentencing Memorandum in its entirety. However, as discussed above, it is appropriate to maintain under seal only the portions that document which contain cooperation information. Therefore, the defendant shall file a redacted sentencing memorandum that does not include cooperation information.

The court has considered, as an alternative approach, unsealing the Government's Motion because it has already been viewed by the Intervenor and limiting access to either that document or the entire docket in the defendant's criminal case so that it is not available on the internet. It appears that access to particular documents or the entire docket could be limited to case participants and individuals who come to the public terminal in the Clerk's Offices. However, the court has concluded that, while such an approach addresses to a large degree[1] the goal of mitigation of the risk of harm to a

---

[1] Such an approach does not address the concern that prisoners can send an acquaintance to the Clerk's Offices.

cooperating defendant who is in custody, it does not serve sufficiently the federal courts' interest in not having court documents used to identify cooperators, nor the interest of the federal criminal justice system in having people being willing to assume the risks associated with cooperating, nor the reliance interest of a cooperating defendant in not having the government's substantial assistance motion publicly disclosed.

**IV. CONCLUSION**

For the reasons set forth above, the Intervenor's motion to unseal is being denied, except to the extent the Intervenor seeks to have a redacted version of the Defendant's Sentencing Memorandum filed.

It is so ordered.

Signed this 6th day of March 2019, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge